THE STATE, JANE VANHORN, PROSECUTRIX, v. THE TOWN OF BERGEN.

1. The council has no right to assess the expenses of improving a street, incurred by individuals by authority of the council, which was not contracted for or superintended by the council.
2. The decision of the case, 5 *Dutcher* 266, concurred in. The assessors were bound to show that they took into consideration all the real estate of the town, and determined what part was benefited.
3. An act of assembly, directing that, in case an assessment should be set aside, new assessors should be appointed, *held* not to authorize a new assessment against an individual whose tax was not set aside, but had been paid and accepted by the council.

This was a *certiorari* bringing up an assessment for a street improvement, and was argued before Justices HAINES and ELMER, by *B. Williamson*, for the prosecutrix, and by *1. W. Scudder*, for the town of Bergen.

The opinion of the court was delivered by

ELMER, J. By virtue of an act, approved in 1855, entitled, "an act to incorporate the town of Bergen, in the county of Hudson," the council of that town passed an ordinance, in 1857, for the regulation and grading of Washington avenue, from the Communipaw road to the Jersey City and Bergen plank road.

In a few days after the adoption of this ordinance, certain owners of property, lying in that part of said avenue from Communipaw road to the bridge over the Morris canal, which is between the two roads named, petitioned the council in writing for permission to grade and flag the same, which was granted. Proposals for the work on the other part of the avenue were received, and contracts entered into. The council took no part in contracting for or superintending the work done between the Communipaw road and the canal.

Assessors were appointed to assess the cost and expenses, who, in February, 1858, made a return, assessing upon several land owners the sum of $6369.44, of which amount

The sum of $1760.33 was assessed on Mrs. Vanhorn, the present prosecutrix. This assessment was confirmed by the council, April 2d, 1858, and on the 8th of the month, Mrs. Vanhorn paid it to the treasurer of the town, and it was formally accepted by the council.

It would seem that the sum so assessed did not include the expense of improving that part of the avenue between the Communipaw road and the Morris canal. As the owners of the land fronting on that part were assessed for some portion of the expenses incurred for improving the avenue between the canal and the plank road, several of them sued out writs of *certiorari* from the Circuit Court of the county of Hudson, which court set aside the confirmation of the assessments for the want of due notice, and ordered the assessments and proceedings to be remitted to the council to proceed anew. Thereupon the council gave a new notice of a meeting to confirm said assessment, and in October, 1859, did formally confirm it.

After this second confirmation, eight of the same persons, who had prosecuted the writs of *certiorari* issued out of the Circuit Court, became the prosecutors of a writ of *certiorari* issued out of this court, and such proceedings were had that, at February term, 1861, this court adjudged the assessments and proceedings to be void, and ordered that the same be set aside, reversed, and for nothing holden ; and that the prosecutors in said *certiorari* be restored to all things they had lost thereby. It appears, by the report of the case, *State* v. *Bergen*, 5 *Dutcher* 266, that this judgment was made on the ground that the assessors, instead of assessing all the owners of land in the town who were benefited by the improvement, as required by the charter, assessed only those whose property fronted on the avenue, or who petitioned for the improvement.

In March, 1859, a supplement to the charter was passed (*Pamph. acts*, p. 271,) providing, that in case any assessment or estimate of value, made by commissioners or freeholders, should be set aside, in whole or in part, by any court or by

State v. Town of Bergen.

the councilmen, &c., it should be lawful for the councilmen to appoint three freeholders, who should proceed to make such assessment, in whole or in part, as the case might require, which assessment should include the expenses of the work done and materials furnished, with interest thereon, &c.

. By virtue of this act, the council, in January, 1862, appointed new assessors, to assess the costs and expenses of grading and regulating, and laying sidewalks, &c., upon Washington avenue, from the Communipaw road to the plank road. In March, these assessors presented their map and report, which, in April, were confirmed.

This assessment is for the aggregate sum of $19,917.77, there having been added to the sum originally assessed $9440.64, for the work done between the Communipaw road and the Morris canal, with interest from the date of the confirmation of the first assessment and sundry incidental expenses. Mrs. Vanhorn is now assessed the sum of $6403.97, and the question to be decided is, whether it has been legally imposed on her.

In my opinion this assessment was altogether unwarranted and illegal.

First. Because the assessment originally made on her was never, within the meaning of the supplement of 1859, set aside. It is true the judgment of this court was rendered in general terms, that the assessments and proceedings should be set aside, reversed, and for nothing holden; but the meaning and effect is, that it was set aside as against the prosecutors, who alone were to be restored to all things they had lost thereby. The well understood practice of the court is not to allow a *certiorari* to question and set aside assessments in gross, but only to bring up those made upon the prosecutors named in the writ; and if the original proceedings are defective, only to set aside such assessments. 1 *Dutcher* 400. The present prosecutrix was no party in the case decided: she had not complained of the assessment, but on the contrary, had paid the amount claimed of her. The whole assessment was adjudged to be illegal, and of course it was

illegal as to her; but having acquiesced in it, and paid the money, and the council having accepted it, the proceeding, as to her, was final, and concluded both parties.

Secondly. The charter of 1855 was loosely drawn, but I think the fair interpretation of it is, that the council could only order assessments for money expended by them, under their express supervision and authority. They had no power to subject property owners to such expenses for improvements, as other interested parties might think proper to incur with their consent and acquiescence. It is plain, that the alleged cost of the work between the Communipaw road and the canal, was not an expense incurred by the council; they did not contract for it, did not superintend it, or in any way control it, and had not paid, or rendered themselves liable to pay any part of it, when the assessment was made.

Thirdly. The assessment was not made upon the principle required by the charter. The opinion pronounced in this court, when the first assessment was before it, appears to me to be correct. But whether it is or not, until reversed by a higher court, it must be respected and conformed to by all inferior tribunals as the law.

This, I think, was not done by the new assessors. They do not certify, in the words of the charter, that they assessed "upon principles of equity and according to the damage or benefit the owner or owners thereof may derive therefrom, the real estate in said town."

They certify that they made the assessment upon principles of equity, and that "we did, in our judgment, consider and adjudge that the owners of the said several lots and plots of ground were the parties benefited, and upon whose lots and plots the assessment should be made;" but this language does not imply that they took into consideration all the real estate in the town, and determined what part of it and how far it was benefited or damaged, and assessed accordingly. It is plain from the whole case, I think, that they did not do this.

We were referred to the 28th section of the new charter, granted in 1862, (*Pamph. acts,* p. 173,) as sanctioning the prin-

ciple, that only the property fronting upon the improvement can justly be assessed. But the entirely different language of this act serves to show very clearly, that the true meaning of the original charter was very different. Upon referring to the 27th section of the new act, it will be seen that the rights of the property owners are carefully guarded, by requiring a preliminary estimate and assessment of the costs to be filed, and by putting it in the power of the owners of two-thirds of the lands to be assessed to arrest the proceedings. Nothing of this kind was contained in the charter under which the assessment in question was made, there not being the same reason for it as now, that the whole expense of an improvement is to be borne by those owning the property where it is made, although other property owners may, in fact, be the most benefited. The assessment, as against the prosecutrix, must be set aside.

Assessment set aside.

CITED in *State* v. *Gardner et al.*, 5 *Vroom* 331; *State, Little, pros.*, v. *Newark*, 7 *Vroom* 172.